# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

SCOTTY A. COOPER,            )
                             )
       **Plaintiff,**    )
                             )
v.                           )   Case No. CIV-15-61-RAW-SPS
                             )
CAROLYN COLVIN,              )
**Acting Commissioner of the Social**  )
**Security Administration,**  )
                             )
       **Defendant.**    )

## REPORT AND RECOMMENDATION

The claimant Scotty A. Cooper requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. As discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on September 15, 1972, and was forty-one years old at the time of the administrative hearing (Tr. 30, 147). He completed the tenth grade and has no past relevant work (Tr. 21, 175). The claimant alleges that he has been disabled since February 1, 2007, due to anxiety, depression, mental breakdown, back problems, hip problems, problems with his right arm, and hepatitis C (Tr. 174).

## Procedural History

The claimant applied for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 on May 21, 2013.[2] His application was denied. ALJ J. Frederick Gatzke held an administrative hearing and determined that the claimant was not disabled in a written opinion dated October 30, 2014 (Tr. 10-22). The Appeals Council denied review, so this opinion is the Commissioner's final decision for purposes of appeal. 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 416.967(a), except that he could have only incidental contact with the public; no more than occasional exposure to dust, fumes, and volatile chemicals;

---

[2] The claimant had been previously awarded supplemental security income benefits on October 30, 2006, due to fractures of the upper limb and other disorders of bone and cartilage, but his benefits were terminated on March 1, 2012, when he was found to be medically improved (Tr. 10).

no more than occasional stooping, crouching, and kneeling; no more than detailed work instructions, no complex work instructions; and no more than frequent handling, reaching, and fingering with the dominant upper extremity with no limitation with the nondominant upper extremity (Tr. 15). Although the claimant did not have any past relevant work to return to, the ALJ determined that the claimant was nevertheless not disabled because there was work he could perform in the regional and national economy, *i. e.*, document scanner, address clerk, and assembly inspector (Tr. 21).

**Review**

The claimant contends that the ALJ erred by: (i) failing to properly account for his pain and credibility; (ii) using boilerplate language to reject his multiple sub-40 global assessment of functioning (GAF) scores; (iii) failing to account for all his limitations, particularly his mental impairments; and (iv) failing to account for his severe impairment of obesity and nonsevere impairment of migraine headaches. The undersigned Magistrate Judge agrees with the claimant's second and third contentions.

The ALJ determined that the claimant had the severe impairments of status post fractures of the right upper extremity (now healed), Hepatitis C (in remission), chronic obstructive pulmonary disease (COPD), degenerative disc disease, obesity, depression, and anxiety (Tr. 12). The claimant was previously found disabled and awarded benefits from 2006 but they were discontinued in 2012 upon a finding of medical improvement. As relevant to this appeal, the claimant was admitted to Red Rock Behavioral Services on March 25, 2013 for complaints of being depressed and thoughts of harming himself, as well as relationship problems and financial stressors (Tr. 382). He was discharged on

March 29, 2013 (Tr. 398). While there, he was stabilized in a secure environment and started on medications to reduce symptoms and stabilize his mood, and was referred to CREOKS for follow up treatment at discharge (Tr. 399). He was assessed with depressive disorder and personality disorders, and assigned a global assessment of functioning (GAF) score of 55 upon discharge (Tr. 394).

On July 31, 2013, Kenny A. Paris, Ph.D., conducted a mental status/diagnostic examination of the claimant (Tr. 403). Dr. Paris observed that the claimant's affect was consistent with his report of depression, and that the claimant was tearful throughout the interview and exam, and Dr. Paris estimated the claimant's IQ at 85-90 (Tr. 406-407). He assessed the claimant with major depressive disorder, recurrent, moderate to severe (without psychotic features) and anxiety disorder NOS, along with a GAF of 40 (Tr. 407). Dr. Paris's assessment indicated that the claimant's memory skills appeared to be impaired, but there were no significant problems with persistence and pace, and that his impairments were based on both mental and physical problems because the combination of mental and physical symptoms leads to greater impairment and makes him less likely to be successful in a job setting, although the physical impairments were beyond the scope of the evaluation (Tr. 407). Additionally, Dr. Paris stated that, from a psychological standpoint, the claimant's ability to perform adequately in most job situations, handle the stress of a work setting, and deal with supervisors or co-workers was estimated to be below average (Tr. 407). Dr. Paris stated that the claimant was not likely to improve in the next twelve months, but that the claimant's judgment was estimated to be adequate (Tr. 407).

In August 2013, the claimant presented to RedBird Smith Health Center noting that his anxiety and depression had increased and he had been out of his medications for several weeks (Tr. 540). He was accepted for therapy and assessed with depressive disorder NOS, along with a GAF of 50 (Tr. 452, 540).

On August 12, 2014, the claimant presented to Brookhaven Hospital in Tulsa, Oklahoma, and he was assessed on Axis I with opiate dependence; major depression, recurrent, severe without psychotic features; generalized anxiety disorder; panic disorder with agoraphobia, and insomnia. He had a GAF of 19 upon admission and a GAF of 40 upon discharge August 17, 2014 (Tr. 646, 665). Upon discharge, it was noted the claimant showed considerable improvement of depression, anxiety, and insomnia with medicine adjustment, and that he successfully detoxified from opiate dependence (Tr. 647). It was noted the claimant knew he had a problem with opiate dependence and with recurrent depressive episodes, and that he would need ongoing treatment (Tr. 648). Anticipated problems upon discharge included relapse and/or mood decompensation (Tr. 648).

In his written opinion, the ALJ summarized the claimant's hearing testimony, as well as the medical evidence. As to the claimant's mental impairments, the ALJ catalogued the claimant's March 2013 suicidal ideation, follow-up treatment at Cherokee Nation Health, treatment at Behavioral Health in August 2013, and inpatient treatment at Brookhaven in August 2014, as well as the follow-up treatment and Dr. Paris's assessment (Tr. 17). The ALJ criticized GAF scores in general without discussing the ones assigned to the claimant in this record, stating that GAF scores are only a snapshot

of a particular time and not intended for forensic purposes such as disability evaluation (Tr. 19). He then spent much time discussing his reasons for not finding the claimant credible, including illicit drug use, but made no *assessment* of Dr. Paris's opinion, nor the medical evidence related to the claimant's mental impairments (Tr. 16-21).

Although the ALJ found that the claimant's severe impairments included depression and anxiety, he failed to account for them in his RFC assessment (nor explain their omission) and further failed to properly address Dr. Paris's opinion as to the claimant's poor prognosis and the importance of the combined effects of his physical and mental impairments (Tr. 12-22). *See, e. g., Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."), *citing Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) and *Hamlin v. Barnhart*, 365 F.3d at 1219 (10th Cir. 2004). *See also Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'"). This was a significant omission here because these limitations discussed directly impact the claimant's ability to perform work. Indeed, the ALJ devoted much of his discussion at step four to questioning his determination at step two, *i. e.*, the severity of these impairments, and further finding him not credible because of, *inter alia*, drug use. *See McCleave v. Colvin*, 2013 WL 4840477, at *6 n.6 (W.D. Okla. Sept. 10, 2013) ("Additionally, the ALJ found Plaintiff's subjective complaints not credible in part because of evidence of her noncompliance with prescribed

psychotropic medications. However, the ALJ did not consider whether Plaintiff had an acceptable reason for failing to follow her prescribed treatment, *which could include her bipolar disorder.*") [emphasis added], *citing* 20 C.F.R. §§ 404.1530(c), 416.930(c) *and Jelinek v. Astrue*, 662 F.3d 805, 814 (7th Cir. 2011) ("ALJ's assessing claimants with bipolar disorder must consider possible alternative explanations before concluding that non-compliance with medication supports an adverse credibility inference."). Instead, the ALJ should have explained why the claimant's severe mental impairments did not call for corresponding limitations in the RFC. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as the significantly probative evidence that he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir 1984). This is particularly important in light of the ALJ's failure to properly assess Dr. Paris's consultative opinion. Although opinions in the record may be afforded various weights based on the relationship between the claimant and the physician, the ALJ is nevertheless required to consider factors relevant to that relationship. The pertinent factors are: (i) the length of treatment relationship and frequency of examination; (ii) nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins v. Barnhart*,

350 F.3d 1297, 1300-1301 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). Here, the ALJ summarized but provided no analysis of Dr. Paris's opinion, and thus rejected it by failing to address it, despite the indication that the claimant had impaired memory and Dr. Paris questioned his ability to perform in a work setting. *Briggs,* 248 F.3d at 1239 ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'") [citation omitted].

Finally, the ALJ chose to ignore other probative evidence as to the limiting nature of the claimant's mental impairments, namely the GAF scores. "[A] GAF score between 41 and 50 indicates [s]erious symptoms (*e. g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (*e. g.*, no friends, inability to keep a job)." *Lee v. Barnhart*, 117 Fed. Appx. 674, 678 (10th Cir. 2004). "Although the GAF rating may indicate problems that do not necessarily relate to the ability to hold a job," *Oslin v. Barnhart*, 69 Fed. Appx. 942, 947 (10th Cir. 2003), "[a] GAF score of fifty or less . . . *does* suggest an inability to keep a job." *Lee*, 117 Fed. Appx. at 678 [emphasis added], *citing Oslin*, 69 Fed. Appx. at 947. Instead of wholesale rejecting them without analysis of the actual evidence in the record, the ALJ should at a minimum have, as he is required with all probative evidence in the record that he rejects, discussed the claimant's multiple scores below (and above) 50 and explained why they were not due to any occupational factors. *See Givens v. Astrue*, 251 Fed. Appx. 561, 567 n.4 (10th Cir. 2007) (noting that "the Commissioner argues that a low GAF score may indicate problems that do not necessarily relate to the ability to hold

a job[,]" but finding that "[e]ven assuming this is true, the ALJ's decision does not indicate he reached the conclusion that Ms. Givens' low GAF score was due to non-occupationally-related factors.").

Because the ALJ failed to properly analyze evidence of record as to the claimant's mental limitations, the Commissioner's decision must be reversed and the case remanded for further analysis by the ALJ. If such analysis results in adjustments to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

In summary, the undersigned Magistrate Judge PROPOSES a finding that correct legal standards were not applied and the decision of the Commissioner is therefore not supported by substantial evidence, and accordingly RECOMMENDS that the decision of the Commissioner be REVERSED and the case REMANDED to the ALJ for further proceedings consistent herewith.

**DATED** this 3rd day of March, 2016.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**